Rice *v.* Hunt.

John P. Rice *v.* Wm. R. Hunt *et al.*

1. Administrator. *Devastavit.* An administrator who voluntarily pays out all the assets in his hands, paying creditors in full, and having knowledge at the time of the existence of another debt, will be held liable for the payment of the latter debt to the extent of a *pro rata,* should it be afterwards established and brought within the period of limitation.

2. Same. *Widow. Allowance for year's support.* May be made out of money on hand at the time the commissioners perform their duties, when there is nothing else on hand.

FROM SHELBY.

Appeal from the Chancery Court at Memphis. R. J. Morgan, Ch.

W. M. Randolph for complainant.

T. B. Micou and S. P. Walker for defendants.

McFarland, J., delivered the opinion of the court.

This cause, upon a demurrer to the original bill, was before this court at the October special term, 1873, and is reported in 12 Heis., 346. The complainant purchased certain lands from Jas. T. Peyton, took his deed with general warranty, and paid him in full. The land was at the time subject to a lien for unpaid purchase money to the heirs of one Bland, of which complainant had notice, but which encumbrance he averred that Peyton had specially stipulated to remove, and the bill averred that the heirs of

3—vol. 7.

Bland were about to enforce their lien. The bill had other aspects not necessary to notice, as the demurrer was sustained, except so far as the bill prayed to compel Peyton or his representative to specifically perform his agreement to remove the encumbrance by paying off the purchase money. The cause was remanded, and the bill answered by Mrs. Peyton as administratrix, in which, among other things, she denied the stipulation upon the part of her intestate to remove said encumbrance, and further, set up the settlement of her intestate's estate as insolvent in the probate court of Shelby county. The answer was filed the 24th of January, 1874.

No proof seems to have been taken under this bill, but on the 10th of July, 1874, leave was obtained to file an amended and supplemental bill, which bill was accordingly filed on the 21st of September, 1874. This bill shows that the Bland heirs had, subsequent to the proceedings referred to, enforced their lien on the lands, and caused the same to be sold on the 4th of April, 1874, and that complainant was compelled to purchase them at the price of $1,940, which went towards paying off the debt, and the sale was confirmed on the 29th of April, 1874. Complainant thereupon prays that the administratrix of Peyton be held liable for the above sum upon the covenants of Peyton's deed as upon an eviction. The bill then proceeds to attack the proceedings in the probate court under which it is claimed by Mrs. Peyton and her sureties that she had fully administered the estate in her hands.

Mrs. Peyton was appointed administratrix on the 15th of October, 1869. She suggested the insolvency of the estate at the October term, 1871, while the present cause under the original bill was pending. An order was entered and publication made requiring creditors to appear and file their claims on or before the 3d day of May. On the 13th of March, 1873, the clerk reported that the only claim filed was by John A. Simms. This was evidenced by an agreement entered into between the administratrix and Simms, showing that there was due the latter from the estate a debt which they agreed to fix at $1,500. The compromise was approved by an order of the court, but, as no other claim was filed, the court in its order declined to find or decree the estate insolvent or make further decree. Notice was thereupon issued and served upon the heirs, a final settlement reported by the clerk on the 24th of April, 1873, and approved by the court on the 6th of May, 1873, and the administratrix and her sureties declared discharged from all liability. In this settlement the administratrix was charged with the proceeds of $13,500 in Tennessee bank notes sold at $72\frac{1}{2}$ cents; $500 in currency; the proceeds of a law library, $309.75, and another item of $30—total, $10,629.25; and credited by $3,600 allowed by commissioners for her year's support, $4,000 paid by her to redeem the Tennessee bank notes from a creditor to whom they had been pledged as collateral security, $1,500 paid to Simms, two items, amounting to $859.20, paid on decrees in the chancery court, costs and counsel fees and taxes,

in all $10,280.65, leaving the remainder to complainant as her compensation.

These proceedings and the final order in the cause, it will be observed, all occurred while the original bill in the present case was pending and before the decision made in this court, October, 1873.

The bill prays for a decree against Mrs. Peyton as administratrix for the $1,940 and interest, and an account of the assets in her hands, for which it is prayed that she and her sureties be held liable to the extent of complainant's demand. The bill also prays for a sale of real estate, but it turns out that the intestate owned no lands which can be reached.

The complainant's present cause of action accrued upon the enforcement by the Bland heirs of their lien upon the land. This was equivalent to an eviction by a paramount and superior title, and the right of action upon the covenant of warranty in the deed of Peyton then accrued. The amended and supplemental bill having been filed within a few months after the cause of action accrued, it is clear that the claim is not barred by the statute of limitations, although the bill was not filed until more than two years and six months from the grant of administration: Code, secs. 2279, 2281, 2784.

The justice of the demand being beyond doubt, the complainant is clearly entitled to a decree against the administratrix, to be levied of any assets which she may now have or which may hereafter come to her hands. But the question is, whether the administratrix and her sureties are protected by the pro-

ceedings of the probate court before referred to. The court did not find or adjudge the estate insolvent, it did not adjudge or pass upon the validity of any claim, unless the order approving the compromise between the administratrix and Simms be so construed, but as the estate was not found insolvent, and was not in fact so, the court probably had no jurisdiction to pass upon the claim or order it paid, at any rate there was no order for distribution. All the court did do was to approve the final settlement of the administratrix, the effect of which is that it must be taken as *prima facie* correct. We do not mean to hold that the probate court might not have proceeded to administer the estate under the insolvent laws, notwithstanding the assets proved to be more than sufficient to pay the debts filed; we only hold that the court did not in fact make any order or decree for the payment of the debts or disbursement of the assets. The payments and disbursements of the administratrix were therefore made, not upon or under the order and judgment of the court, but upon her own responsibility, and may consequently be impeached.

But in the first place, assuming that the payments made by the administratrix were upon *bona fide* debts due and owing from the estate, the question is whether she and her sureties are not liable to the complainant at least for a *pro rata* share of the assets. While it appears that the suggestion of insolvency was made in good faith and upon sufficient cause, yet, when it turned out that sufficient claims were not filed to authorize the court to proceed to administer the estate

under the insolvent laws, then when the administratrix elected voluntarily to pay creditors in full, she did so at the peril of being held liable to such other creditors as might yet establish their claims within the period of limitation, and of which claims the administratrix then had notice. It clearly appears that she did have notice of the existence of the present demand. The complainant's original bill was pending and was commenced before the suggestion of insolvency, and while the proof shows that the attention of the complainant's solicitor was called to the insolvent proceeding, yet our recent holdings have been that he would not have been barred for failing to file his claim in these proceedings, even if they had finally been consummated as insolvent proceedings, provided his decree was filed in reasonable time after it was obtained and before actual distribution. But the case in the form presented under the original bill was not made out, nor were the insolvent proceedings carried out, and the pendency of that bill is only referred to for the purpose of showing that the administratrix had notice of the present claim, which is in substance the same made in the original bill, although upon a different ground. Peyton's notes for the lands sold to the complainant were in the hands of the clerk and master and unpaid, of which it fully appears the administratrix had notice. So that she had full notice of the existence and justice of this demand in some form, either to the clerk and master or to the complainant, in the event the lien on the lands be enforced. We are therefore of opinion that the admin-

istratrix and her sureties are, in any event, liable to complainant for a *pro rata* of the assets which should have been appropriated to ·the debts.

We see no ground to charge the administratrix with other assets than those with which she has charged. herself. Objection has been taken to the charge of the Tennessee bank notes at $72\frac{1}{2}$ cents on the dollar, but we are of opinion that in the sale of the notes at that price she acted in good faith and with reasonable diligence. Objection is also taken to the allowance of $3,600 to the administratrix as widow for her year's support for herself and children. The objection is, that the commissioners could only set apart to her such articles or moneys as were ·on hand at the death of her husband, and that was only $500 on hand in money. The $13,500 was on hand in legal contemplation, although it had been pledged to a creditor. Before the commissioners acted these notes had been redeemed and exchanged ·for other currency, and we think it was within the power of the commissioners to set apart a year's support out of this money, especially as the intestate left no other means of support for his family.

We see no ground to question the validity of any of the debts paid by the administratrix, unless it be the debt of $1,500 to Simms. There is no proof of this claim except the agreement entered into between the administratrix and Simms in March, 1873, when, so far as appears, the claim was barred by the statute of limitations, though there may have been a request for delay. Nor can we see from the recitals

of this agreement that the claim could have been proven, although there is proof that the administratrix was advised by counsel to make the compromise as the claim could be proven, and it may be that its justice was known to the administratrix herself. Simms, however, was her brother-in-law. The question as to the legality of this debt will be left open for proof upon a reference to the master.

The decree of the chancellor will be reversed and a decree rendered in accordance with this opinion, and the cause remanded, the administratrix paying the costs of this court.